UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARAVAN FACILITIES
MANAGEMENT, LLC,

                Plaintiff,

v                                                        Case No. 19-11310
                                                        Honorable Thomas L. Ludington

HAUSRATH LANDSCAPE
MAINTENANCE, INC,

                Defendant.
_____/

**ORDER GRANTING MOTION TO DISMISS AND DISMISSING COMPLAINT
FOR WANT OF JURISDICTION**

On April 3, 2019, Plaintiff Caravan Facilities Management, LLC filed a complaint in the Saginaw County Circuit Court against Defendant Hausrath Landscape Maintenance, INC. ECF No. 1 at PageID.7-14. Plaintiff claims that Defendant has continued to bill Plaintiff for services under an allegedly terminated contract and seeks declaratory relief. *Id.* On May 6, 2019, Defendant removed the case to the federal district court. ECF No. 1. On May 14, 2019, Defendant filed a motion to dismiss for lack of personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 3. For the following reasons, the motion will be granted.

**I.**

**A.**

Plaintiff is a Michigan limited liability company with its principal place of business in the County of Saginaw, Michigan. PageID.54. Plaintiff is also registered to conduct business in the State of New York. *Id.* Defendant is a New York corporation with its principal place of business in the City of Amherst, New York. *Id.* Defendant is not registered to conduct business in the State

of Michigan. *Id.*

According to Plaintiff's complaint, Plaintiff was hired by General Motors ("GM") to conduct maintenance and cleaning services at GM's Tonawanda, New York Engine Plant. PageID.8. Pursuant to its contract with GM, one of Plaintiff's responsibilities was to remove snow from facilities at the Tonawanda Engine Plant. *Id.* Plaintiff does not provide any further information regarding the terms of its contract with GM. Plaintiff subcontracted the snow removal services at the Tonawanda Engine Plant to Defendant on a yearly basis with an option to renew, which Defendant extended for a number of years. PageID.9.

In August 2018, GM changed its requirements for snow plowing at the Tonawanda Engine Plant and required Plaintiff to rebid the price of the work moving forward. *Id.* Plaintiff informed Defendant that it would not renew Defendant's Purchase Order for the 2018 snow removal season because the cost was too high for GM. *Id.* Defendant agreed to review its pricing for possible reductions and participated in the new bid process for the 2018 snow removal season but ultimately was unable to lower its price due to increased costs. *Id.*

Plaintiff then solicited bids from other vendors, one of which provided lower pricing, causing Defendant to lose the contract for the 2018 snow removal season. PageID.10. Plaintiff gave notice to Defendant that Plaintiff had accepted a lower bid and the contract between Plaintiff and Defendant was therefore terminated pursuant to the termination for convenience clause of the Terms & Conditions. *Id.*

Defendant has continued to bill Plaintiff monthly for work but has not performed services for Plaintiff for the 2018 snow removal season. *Id.* Defendant argued that the contract is for a five-year term and may not be terminated. *Id.* Defendant further argued that Plaintiff breached the contract and Defendant is therefore entitled to participate in snow removal services for the 2020

and 2021 season. *Id.* Plaintiff alleges that the Purchase Order was for a one-year contract with the option of adding additional years under the same terms for up to four additional years with the same pricing. PageID.9.

**B.**

Plaintiff's complaint presents three counts. Count I alleges that Plaintiff is entitled to declaratory judgment under MCR 2.605 because Defendant waived the original contract between the parties by submitting a new bid. PageID.10-11. Count II alleges that Plaintiff is entitled to declaratory judgment under MCR 2.605 because the Purchase Order was a one-year contract that Plaintiff chose not to renew. PageID.11-12. Count III alleges that Plaintiff is entitled to declaratory judgment under MCR 2.605 because Plaintiff terminated the contract under the convenience clause of the Terms & Conditions included in the contract. PageID.13-14.

**II.**

Defendant has moved to dismiss all three of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(2). ECF No. 3. Rule 12(b)(2) provides that a party may assert the defense that the court lacks personal jurisdiction over a defendant.

Plaintiff argues that the Court has limited personal jurisdiction over Defendant under the Michigan long-arm statute, Mich. Comp. Laws § 600.715(1). PageID.88-90. Section 600.715(1) provides, in relevant part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgment against such corporation arising out of the act or acts which create any of the following relationships: (1) The transaction of any business within the state.

The Michigan long-arm statute is limited by constitutional due process considerations. When determining whether an exercise of personal jurisdiction would uphold due process, a

defendant must have sufficient "minimum contacts with the forum state." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). Therefore, long-arm jurisdiction under § 600.715 may only be asserted if three additional criteria are satisfied:

1) The defendant must "purposely avail himself of the privilege of acting in the forum state or causing consequence in the forum state";
2) The cause of action must "arise from the defendant's activities" in the forum state; AND
3) The defendant's acts "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Southern Machine Company, Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### III.

Defendant argues that its connections to Michigan do not amount to the transaction of business within the State of Michigan under § 600.715(1). PageID.61-65. Defendant further argues that its alleged connections to Michigan do not provide the minimum contacts that due process requires. PageID.65-68.

### A.

To determine whether the Court has limited personal jurisdiction over Defendant, the first question is whether Defendant engaged in "the transaction of any business" in Michigan pursuant to § 600.715(1).

Defendant contends that it did not transact any business in Michigan because Defendant "did not reach out into the State of Michigan in search of a business arrangement," but rather Plaintiff solicited Defendant's services in New York. PageID.64. Defendant further contends that the parties' relationship was "isolated and tenuous subject to cancellation for any time for any reason" and therefore did not establish the "continuing relationships and obligations" necessary to find limited personal jurisdiction. PageID.65. Plaintiff argues that Defendant's actions in

"negotiating, communicating, and executing the contract occurred in Michigan," thus making limited personal jurisdiction over Defendant proper. PageID.89.

Here, Defendant's contacts with Plaintiff are sufficient to establish that Defendant transacted business in accordance with § 600.715(1). Defendant exchanged "multiple emails" and participated in "numerous telephone conferences" with Plaintiff, who resides in Michigan, and collected payment sent from Plaintiff's Saginaw, Michigan office. *Id.*

Defendant need only transact "any business" in Michigan to satisfy the first criterion. § 600.715(1). The Michigan Supreme Court has stated that "the word 'any' means just what it says. It includes 'each' and 'every' . . . It comprehends the 'slightest.'" *Lanier v. American Bd. Of Endodontics*, 843 F.2d 901, 906 (quoting *Sifers v. Horen*, 385 Mich. 195, 199 n.2 (1971)). In *Lanier*, the American Board of Endodontics, an Illinois corporation, mailed documents, exchanged phone calls, and collected an application fee from the Michigan plaintiff. *Id.* at 907. This correspondence was sufficient to establish that the Board transacted business in Michigan and thus satisfied § 600.715(1). *Id.*

In the present case, therefore, the statutory requirement for limited personal jurisdiction over Defendant, § 600.715(1), is satisfied.

**B.**

To determine whether the Court has limited personal jurisdiction over Defendant, the second question is whether applying the Michigan long-arm statute would be consistent with the principles of due process, which requires:

1) The defendant to "purposely avail himself of the privilege of acting in the forum state or causing consequence in the forum state";
2) The cause of action to "arise from the defendant's activities" in the forum state; AND
3) The defendant's acts to have a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Southern Machine*, 401 F.2d at 381.

### 1.

Purposeful availment is present where the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)). Purposeful availment "ensures that a Defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id.*

Defendant contends that it did not purposely avail itself of the benefits of doing business in Michigan because it is "a landscape company that mows grass and removes snow only in the *State of New York*." PageID.67 (emphasis in original). Defendant further contends that Plaintiff, a company also registered to do business in New York, "engaged the Defendant as a subcontractor for its own contract work on behalf of a General Motors facility in the *State of New York*." PageID.68 (emphasis in original). Moreover, the work pursuant to the contract "was commissioned in New York" and "took place in New York." PageID.135.

Plaintiff first argues that Defendant purposely availed itself of Michigan as a forum for suit because "Defendant had a long-standing prior relationship with General Motors, a Michigan company, for several years prior to Defendant's contractual relationship with Plaintiff, also a Michigan company." PageID.92. However, the relevant question is whether this Court can exercise limited personal jurisdiction over Defendant to adjudicate the snow-removal contract dispute between Plaintiff and Defendant. The parties have not asked the Court to exercise limited personal jurisdiction over Defendant for any other purpose.

Plaintiff has provided no information about the genesis of the contract between Defendant

and GM. The Court therefore expresses no opinion as to whether any Michigan court[1] would have limited personal jurisdiction over Defendant to adjudicate a contract dispute between Defendant and GM. Moreover, Plaintiff's argument tends to undermine the notion that Defendant specifically targeted Plaintiff to negotiate a contract. To the contrary, Defendant already "had a long-standing prior relationship with General Motors . . . for several years prior to Defendant's contractual relationship with Plaintiff." *Id.* Thus, by Plaintiff's own admission, it was only by happenstance that Plaintiff became the new general contractor for GM's Tonawanda facility, at which time Defendant had already been providing snow-removal services for several years without Plaintiff's involvement.

Plaintiff further argues that "Defendant voluntarily transmitted the executed Agreement from Defendant to Plaintiff who resides in Michigan, sent multiple emails to Plaintiff in Michigan, communicated via telephone calls with Plaintiff in Michigan, and invoiced and mailed letters and invoices to Plaintiff at its Saginaw, Michigan office." PageID.93.

However, Defendant's "use of interstate facilities such as telephone and the mail" to communicate with Plaintiff in Michigan does not provide the minimum contacts required by due process. *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989) (quoting *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982)); *see also Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). These are the type of unremarkable communications that are necessary for the administration of any contract, irrespective of where the parties are incorporated or have their principal place of business. If such administrative communications were sufficient to support a finding of purposeful availment, then every party to a contract would be subject to personal jurisdiction in every state where their

---

[1] Meaning any Michigan state court or federal court sitting in diversity

contractual counterparts reside. Plaintiff concedes that "entering into a contract with a Michigan company by itself does not automatically confer sufficient contacts" to support personal jurisdiction. PageID.92. It follows that administrative communications regarding the contract are equally insufficient.

Lastly, Defendant did not reach out to the citizens of Michigan. "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State." *Burger King*, 471 U.S. at 473. Plaintiff does not allege that Defendant advertised in Michigan at the time of the agreement's execution, nor does Plaintiff allege that Defendant currently advertises in Michigan. Plaintiff maintains that it did not "solicit" services from Defendant. Rather, when Plaintiff took over the facility management contract with GM, Plaintiff "kept Defendant" (the incumbent snow removal contractor) on to perform snow removal services (albeit at GM's request). PageID.89.

However, the fact that Plaintiff did not solicit business from Defendant does not mean that the opposite is automatically true. Based on Plaintiff's description of the relevant events, it appears that neither Plaintiff nor Defendant solicited business from each-other. Defendant's lack of activity in Michigan beyond communicating with Plaintiff about a contract to be performed in New York does not suggest that Defendant was attempting to have "ongoing, far-reaching consequences" in a Michigan service market. *See Lanier*, 843 F.2d at 911. Plaintiff's allegations suggest that Defendant "presumably would have been pleased to communicate with . . . [Plaintiff] wherever the latter wished." *Int'l Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997). Therefore, Defendant's connection to Michigan does not rise above the level of "fortuitous" and "attenuated" to make personal jurisdiction over Defendant proper.

**2.**

The "arising from" element is satisfied when "the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). For Plaintiff's cause of action to arise from Defendant's activities within the forum state, it must be "'related to' or 'connected with' the defendant's forum contacts." *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003).

Plaintiff's cause of action concerns the interpretation of the contract's duration. Plaintiff correctly contends that "but for the contract between Plaintiff and Defendant, no cause of action would exist" PageID.94. The cause of action thus arises from the contract negotiation and drafting stage. Since the contract was "negotiated over communications lines in Michigan," Plaintiff's cause of action arises from Defendant's contacts in Michigan.

Despite Plaintiff's cause of action arising from Defendant's contacts with Michigan, the Court cannot exercise limited personal jurisdiction over Defendant because Defendant has not purposely availed itself of the benefits of Michigan law.

**3.**

Finally, Defendant's acts must "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991).

Whether exercising personal jurisdiction over Defendant is reasonable depends on several factors, including: 1) "the burden on the defendant"; 2) "the interest of the forum state"; 3) "the plaintiff's interest in obtaining relief"; and 4) the interest of other states in "obtaining the most efficient resolution of controversies." *Id.* at 1461.

First, requiring Defendant to litigate this case in Michigan would be burdensome. Defendant is a resident of New York and travel from New York to Michigan to litigate this dispute

would impose a burden on Defendant's counsel. Moreover, the fact that Plaintiff is also registered to conduct business in New York and reached out to Defendant to inquire about a subcontracting relationship further makes litigating this case in Michigan unreasonable.

Second, Plaintiff has not identified Michigan's interest in this case beyond merely stating that "Michigan has an interest in allowing a Michigan company to litigate a contract executed in Michigan." PageID.95.

Third, Plaintiff undoubtedly has an interest in obtaining declaratory relief from the Defendant.

Lastly, New York's interest in resolving the case is considerable because it concerns two parties registered to do business in New York, a contract involving work undertaken in New York by New York citizens.

On balance, Defendant's acts do not have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable.

### IV.

Accordingly, it is **ORDERED** that Defendant's motion to dismiss, ECF No. 3, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1 at PageID.7-14, is **DISMISSED** for want of jurisdiction.

Dated: June 20, 2019                    s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge